Marilyn LOVE and T.L., an Infant appearing by his Parent and Legal Guardian Marilyn Love, Plaintiffs,

v.

RIVERHEAD CENTRAL SCHOOL DISTRICT; Board Of Education, Riverhead Central School District; Paul K. Doyle, Superintendent of Schools, Riverhead Central School District and Individually; and Andrea Pekar, Principal, Riverhead Middle School, Riverhead Central School District and Individually, Defendants.

No. 09–cv–5680 (ADS)(WDW).

United States District Court, E.D. New York.

Nov. 9, 2011.

Law Office of Harriet A. Gilliam by Harriet A. Gilliam, Esq., of Counsel, Riverhead, NY, for Plaintiffs.

Devitt Spellman Barrett, LLP by Jeltje DeJong, Esq., Kelly E. Wright, Esq., of Counsel, Smithtown, NY, for Defendants.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The Plaintiffs in this case bring an action for damages pursuant to 42 U.S.C. § 1983 ("Section 1983") as a result of the Defendants' alleged violation of the Plaintiffs' due process rights, equal protection rights, and Fourth Amendment right to be free from an unreasonable search. The infant Plaintiff claims that he was subjected to an unreasonable search of his person and property when he was an eighth grade student at the Riverhead Middle School. The Defendants now move for partial summary on two grounds. First, the Defen-

dants seek dismissal of the complaint against the individual Defendants Paul K. Doyle and Andrea Pekar for insufficient service of process. Second, the Defendants seek dismissal of the claims of the Plaintiff Marilyn Love, the infant Plaintiff's mother, on the ground that her claims are solely derivative in nature and therefore unrecoverable under Section 1983. For the following reasons, the Court grants in part and denies in part the Defendants' motion.

## I. BACKGROUND

On February 15, 2007, the infant Plaintiff T.L. was attending the Riverhead Middle School as an eighth grade student. Approximately five to ten minutes into his fourth period class, a security guard named Lisa Johnson entered T.L.'s class and told him to report to the office of the school Principal, Defendant Andrea Pekar. The security guard then escorted T.L. to Pekar's office, where another security guard, Bill Toliver, was also present.

Pekar told T.L. that he was observed giving money to two students that morning and she then accused him of selling drugs. T.L. denied this allegation. Pekar then notified T.L. that she was going to have him searched. Toliver patted down T.L. and also ordered him to take off his boots. The entire search lasted no more than two minutes. The security officer did not uncover any evidence of drugs or drug paraphernalia. The Plaintiff alleges that Pekar then verbally threatened T.L. and warned him not to sell drugs in her school.

The Plaintiffs claim that, pursuant to school policy, the random drug search of students requires that there be some reasonable ground for suspicion that the student has drugs on his person or is engaged in some illicit drug activity. However, the Plaintiffs assert that Pekar had no factual basis for her accusations; did not present any witness or statement to support her accusations; and T.L. had no prior disciplinary actions that would give rise to reasonable suspicion.

On December 30, 2009, the Plaintiffs filed a complaint against the Riverhead Central School District (the "District"), the Board of Education of Riverhead School District (the "Board"), as well as against Paul K. Doyle, Superintendent of Schools and Andrea Pekar, Principal, individually and in their official capacities (the "individual Defendants"). The complaint asserts several causes of action on behalf of the infant Plaintiff T.L., pursuant to Section 1983, which are grounded in due process, equal protection, and the Fourth Amendment. There is also one Section 1983 cause of action asserted on behalf of Marilyn Love, T.L.'s mother.

There is a dispute of fact regarding the service of process upon the individual Defendants allegedly made on or about April 20, 2010. However, there is no dispute that an answer to the complaint was filed by the District and the Board on May 17, 2010, which raised the affirmative defense of lack of personal jurisdiction over the Defendants Doyle and Pekar. On August 8, 2011, the Defendants filed the present motion for partial summary judgment to dismiss the complaint against the Defendants Andrea Pekar and Paul K. Doyle, as well as the claims of the Plaintiff Marilyn Love.

## II. DISCUSSION

### A. Legal Standard on a Motion for Summary Judgment

It is well-settled that summary judgment under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c). A fact is "material" within the meaning of Fed.R.Civ.P. 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202 (2d Cir.1995) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam), and *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989)).

■ Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). However, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

**B. As to the Defendants' Motion to Dismiss the Complaint Against Individual Defendants Paul K. Doyle and Andrea Pekar**

The Defendants assert that the Plaintiffs' complaint as against the individual Defendants Paul K. Doyle and Andrea Pekar must be dismissed on the ground that the summons and complaint were never served on the individual Defendants. The Defendants acknowledge that the District Clerk, Barbara O'Kula, was authorized to accept service on behalf of the District and, in appropriate circumstances, for the District administrators. However, according to O'Kula's affidavit, only two copies of the summons and complaint were given to the Clerk, and that she accepted them only on behalf of the District and the Board of Education. On the other hand, the Plaintiffs have provided the Court with an affidavit of service for each of the individual Defendants.

In the Defendants' Answer, dated May 17, 2010, the Defendants asserted as an affirmative defense that "[t]his Court lacks jurisdiction over defendant[s] Paul K. Doyle and [Andrea Pekar]." In addition, the Defendants claim to have discussed the insufficiency of service with the Plaintiffs on multiple occasions and made a formal request to discontinue the claims against them.

In accordance with Fed.R.Civ.P. Rule 4(m), Plaintiffs were required to serve a summons and complaint upon each named defendant within 120 days of the filing of the complaint. Rule 4(m) states, in part:

If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

However, this Court need not address whether the Plaintiffs ever properly served the individual Defendants for purposes of the instant motion. Even if the individual Defendants were not properly served, the Court finds that the Defendants have waived the right to assert the lack of jurisdiction based on insufficient service.

A defense of insufficiency of process is waived if it is not promptly asserted by motion or in the responsive pleading. Fed.R.Civ.P. 12(h)(1). Rule 12(b) of the Federal Rules of Civil Procedure clearly states that a defense of insufficiency of process, if made by motion as opposed to in a pleading, "must be made before pleading if a responsive pleading is allowed." Fed.R.Civ.P. 12(b). The Defendants did file a responsive pleading, *i.e.* their answer to Plaintiffs' complaint, and if this defense was to be raised in a motion, the Defendants were required to raise it in a pre-answer motion. According to Rule 12(h)(1), failure to do so before the answer, whether by individual motion or a consolidated motion under Rule 12(g), waives the improper service of process defense. Here, no pre-answer motions, consolidated or otherwise, were made by the Defendants. Therefore, this Court will be bound to hold the improper service defense waived in this case unless it finds that the Defendants successfully raised it in their answer.

The Defendants did not raise the defense of improper service in their answer, but rather, raised the defense of a lack of personal jurisdiction. Other courts in this Circuit have directly addressed the question of whether the language of the Defendant's affirmative defense in their answer—that "[t]his Court lacks jurisdiction over defendant . . ."—"sufficiently incorporates an insufficiency of service of process defense to preserve it for specification in later motions." *Federal Home Loan Mortgage v. Dutch Lane Assocs.*, 775 F.Supp. 133, 137 (S.D.N.Y.1991). As aptly stated by Judge Goettel in the Southern District of New York,

> To resolve this issue, we first turn to the specific language of Fed.R.Civ.P. Rule 12(b). In specifying which defenses may be raised in pre-answer motions, it separately lists (2) lack of jurisdiction over the person and (5) insufficiency of service of process. There is no implication that the fifth defense listed, improper service of process, is subsumed within the second defense listed, lack of personal jurisdiction. Although Rule 12 clearly envisions in subsections (b) and (g) the joining of one or more of these defenses in a single motion or pleading, it does not imply that any one of the listed defenses may be raised or preserved by raising one of the other listed defenses. Consequently, we conclude that the raising of a "lack of personal jurisdiction" defense does not, under Rule 12, concurrently raise or preserve an insufficiency of service of process defense. If the Federal Rules of Civil Procedure manage to clearly and separately identify an "insufficiency of service of process" defense, it places no meaningful burden on defendants to require them to do the same. Allowing parties to engage the judicial process yet delay in raising issues of technical defects in the proper form of service of process that could have been easily cured early on makes little sense and merely wastes precious judicial time and resources.

*Id.*; *see also Santos v. State Farm Fire and Casualty Co.*, 902 F.2d 1092, 1096 (2d Cir.1990) ("A defendant cannot justly be allowed to lie to wait, masking by misnomer its contention that service of process has been insufficient, and then obtain a dismissal on that ground only after the statute of limitations has run, thereby de-

priving the plaintiff of the opportunity to cure the service defect.").

Other courts, including in this District, have supported the analysis that these two separate defenses are distinct. *See, e.g., Am. Ass'n of Naturopathic Physicians v. Hayhurst,* 227 F.3d 1104, 1107 (9th Cir. 2000) (rejecting the defendant's argument that he previously raised a personal jurisdiction defense by claiming that he "had not been properly served" because it "confuses two separate defenses under Rule 12(b)."); *Anderson v. Sullivan,* No. 03 Civ. 4064, 2005 WL 1123772, at *3 (E.D.N.Y. May 9, 2005) ("these defenses are not the same, and not meant to be commingled or used interchangeably, as Defendant implicitly suggests."); *Yangming Marine Transp. Corp. v. Formost Int'l, Inc.,* No. 88 Civ. 1318, 1990 WL 17729, at *1 (S.D.N.Y. Feb. 16, 1990) ("insufficiency of service of process under Rule 12(b)(5) . . . [is] a quite different defense from lack of jurisdiction over the person under Rule 12(b)(2)"); and *Scriptomatic, Inc. v. Agfa-Gevaert, Inc.,* No. 72 Civ. 4482, 1973 WL 830, at *2 (S.D.N.Y. Jun. 28, 1973) ("Since the issues presented by the [Rule 12(b)(2) and Rule 12(b)(5)] motions are different, court will consider each motion [separately].").

At some point, the Defendants did act to alert the Plaintiffs that its "lack-of-jurisdiction claim was in fact a contention that service of process was insufficient." *Santos,* 902 F.2d at 1096. This Court does not find that the Defendant in this case was "ly[ing] in wait, masking by misnomer its contention that service of process [had] been insufficient, and then [attempted to] obtain a dismissal on that ground only after that statute of limitations has run, thereby depriving the plaintiff of the opportunity to cure the service defect." *Id.* Other courts have deemed that the jurisdictional defense was not waived when a plaintiff was on notice, because such a ruling would elevate form over substance.

*See, e.g., Phat Fashions, L.L.C. v. Phat Game Athletic Apparel, Inc.,* No. 00 Civ. 0201, 2001 WL 1041990, at *4 (S.D.N.Y. Sep. 7, 2001).

██ However, the Court sees no reason in this case to stray from technical compliance with Rule 12(h)(i). First, even if the Defendants have asserted this defense informally to the Plaintiffs, they do not demonstrate any evidence of doing so until at least one year after the action was commenced. This delay is in addition to the Defendants' delay to challenge personal jurisdiction by a motion with this Court. "[U]ndue delay in challenging personal jurisdiction by a motion to dismiss may constitute a waiver." *Caruolo v. A C and S, Inc., et al.,* No. 93 Civ. 3752, 1998 WL 633684, at *3 (S.D.N.Y. Sep. 15, 1998) ("The responsive pleadings do not preserve the defense [of insufficiency of process] in perpetuity."). *see also Caribe Carriers, Ltd. v. C.E. Heath & Co.,* 784 F.Supp. 1119, 1125 (S.D.N.Y.1992) (finding that an improper service defense, which was first ambiguously raised in defendant's answer, was insufficient to defeat plaintiff's summary judgment motion, when two years had transpired between the time defendant answered and when it opposed plaintiff's motion, during which time discovery had been completed and defendant had not moved to dismiss). The Defendants continued to participate in this case, not for several months, but for almost two years after receipt of the complaint before electing to move for dismissal.

Courts have held that minimal participation in the litigation alone does not warrant a waiver of this defense. *See, e.g., Durant v. Traditional Investments, Ltd.,* 88 Civ. 9048, 1990 WL 33611, at *3 (S.D.N.Y. March 22, 1990) (finding that engaging in settlement negotiations and evading discovery was not substantial enough participation to constitute waiver).

However, in those cases, the defendant had clearly asserted the defense in the answer. *See Elbex Video Kabushiki Kaisha v. Taiwan Regular Electronics Co., Ltd.,* No. 93 Civ. 6160, 1994 WL 185896, at *2 (S.D.N.Y. May 10, 1994) (finding participation in the litigation insufficient where the defense of improper service was raised unambiguously in the answer). This is not the case at hand.

Accordingly, because the Court finds that the defense was not unambiguously raised in the Defendant's answer, and because the Defendants did not otherwise promptly assert it, any defense for improper service of process has in effect been waived. *See* Fed.R.Civ.P. 12(h). Thus, the Defendants' motion for summary judgment on this ground is denied.

## C. As to the Defendants' Request that the Court Dismiss the Claims of Plaintiff Marilyn Love as Solely Derivative in Nature

■ The other basis for the Defendants' Partial Summary Judgment Motion is that the Plaintiff Marilyn Love's claims warrant dismissal because they are only derivative in nature. The cause of action specifically related to Marilyn Love states that the deprivation of due process caused her to "suffer mental anguish, emotional distress, embarrassment, damages to her reputation, humiliation, and loss of enjoyment of life." (Complt. at ¶ 40.). The Plaintiffs do not specify in the complaint whose due process rights are being deprived to cause Marilyn Love this anguish, and further, they do not specify in the complaint whether the due process is substantive or procedural. The Defendants contend that this due process claim is solely derivative of T.L.'s due process claims. The Plaintiffs contend, on the other hand, in their Memorandum of Law in Opposition, that the claim is related to the District's failure to notify Marilyn Love that her son was removed from class; escorted to the Princi-

pal's office; and searched. In other words, the Plaintiffs assert that Marilyn Love's Section 1983 claim is for the deprivation of her own procedural due process as secured by the Fourteenth Amendment. The Plaintiffs also allude to an equal protection violation on Marilyn Love's behalf, although the complaint does not specifically allege this violation.

■ The Defendants are correct that it is well-settled that a cause of action may not be asserted pursuant to Section 1983 for emotional distress, loss of society, loss of services, or any other consequent collateral injuries allegedly suffered personally by a victim's family members. *See Collins v. West Hartford Police Dept.,* 324 Fed. Appx. 137, 139 (2d Cir.2009); *Bliss v. Putnam Valley Cent. Sch. Dist.,* No. 06 Civ. 15509, 2011 WL 1079944, at *3 (S.D.N.Y. Mar. 24, 2011); *Harrison v. Harlem Hosp.,* No. 05 Civ. 8271, 2007 WL 2822231, at *4 (S.D.N.Y. Sep. 28, 2007); *Morgan v. City of New York,* 166 F.Supp.2d 817, 820 (S.D.N.Y.2001) (dismissing mother's § 1983 claims because she "lacks standing to bring individual claims under § 1983 based upon a deprivation of her daughter's constitutional rights"). Thus, to the extent that the cause of action asserted on Marilyn Love's behalf is directly derived from the deprivation of her son's constitutional rights, this claim is appropriately dismissed. In addition, this Court notes that any equal protection violation asserted by the Plaintiff Marilyn Love relating to differential treatment on the basis of T.L.'s race would necessarily be derivative in nature and is also dismissed.

However, if it is assumed that Marilyn Love is alleging the deprivation of her own constitutional rights, this presents a more complicated issue. The Plaintiffs note, and the Defendants do not dispute, that the lack of parental notice likely violated the provision in the District's Student

Handbook, Section XII, which states that the District is required to promptly record and maintain information of a search, including the results of parental notification. If the Defendants failed to follow some established procedure, that failure, standing alone, does not necessarily rise to the level of a constitutional violation. However, the Plaintiffs appear to claim that Marilyn Love has a protected interest in having her son receive an education without interruption by unlawful and unauthorized acts of District officials.

■ "Parents [do] have a constitutionally protected liberty interest in the care, custody and management of their children." *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir.1999); *Wilkinson v. Russell*, 182 F.3d 89, 103 (2d Cir.1999) ("It has long been settled in this Circuit 'that a parent's interest in the custody of a child [is] a constitutionally protected liberty interest subject to due process protection.'") (quoting *Cecere v. City of New York*, 967 F.2d 826, 829 (2d Cir.1992)) (alteration in original). This interest is protected by both the substantive and procedural safeguards of the Due Process Clause of the Fourteenth Amendment. *See Kia P. v. McIntyre*, 235 F.3d 749, 758–59 (2d Cir. 2000).

■ With regard to procedural due process, the only kind of due process alleged in the instant matter, it is clear that "before parents may be deprived of the care, custody or management of their children without their consent, due process … must be accorded to them." *Tenenbaum*, 193 F.3d at 593. The Supreme Court has observed that "[t]he liberty interest … of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

The cases which have held that there is a Section 1983 cause of action pertaining to the parent-child relationship typically take place in the context of physical removal. *See, e.g., Duchesne v. Sugarman*, 566 F.2d 817, 825 (2d Cir.1977) (finding that mother had a cognizable claim under Section 1983 for seizure of her children by welfare authorities without a hearing or court order). Courts in this Circuit have similarly found that a parent may have a valid Section 1983 claim for deprivation of the parent-child relationship in the wrongful death context. *See, e.g., Greene v. City of New York*, 675 F.Supp. 110 (S.D.N.Y.1987). However, the Second Circuit has not explicitly addressed whether municipal action that has an incidental effect on the parent-child relationship, as in the present case, is sufficient to make out a Section 1983 claim on behalf of a parent.

The majority of the other Circuits that have addressed the issue have "expressly declined to find a violation of the familial liberty interest where the state action at issue was not aimed specifically at interfering with the relationship." *Russ v. Watts*, 414 F.3d 783, 787–88 (7th Cir.2005) (citing cases). This Court agrees and concludes that there is no constitutional harm to a plaintiff's parental rights pursuant to Section 1983 unless the parent-child relationship itself has been targeted. *See McCurdy v. Dodd*, 352 F.3d 820, 830 (3d Cir.2003) ("It would … stretch the concept of due process too far if we were to recognize a constitutional violation based on official actions that were not directed at the parent-child relationship."); *Rosenhouse v. Palmyra–Macedon Cent. School Dist.*, No. 07–CV–6438, 2008 WL 2331314, at *4 (W.D.N.Y. June 3, 2008).

■ In this case, T.L. was never physically removed from his school, home or from the care of his parents. The Plaintiffs do not identify a case, and this Court

has not uncovered one, where questioning or searching a child at school in connection with a drug investigation without the parents' consent or notice constitutes a removal or other interference with the parent-child relationship that would trigger a parent's due process interests. T.L. was removed from his classroom for a short period of time to speak with the Principal, and the search of T.L.'s person and belongings took only a few minutes to complete.

Therefore, the Plaintiffs have not stated a cognizable claim for the violation of Marilyn Love's constitutional rights, as a result of the search of her son's person by school officials. *Accord Walsh v. Erie County Dep't of Job and Family Servs.,* 240 F.Supp.2d 731, 737 (N.D.Ohio 2003) (holding that parents did not have a "cognizable claim for interference with the parent-child relationship because the defendants' conduct was not directed specifically toward disruption of the family relationship"); *Baynard v. Lawson,* 76 F.Supp.2d 688, 694 (E.D.Va.1999) (holding that parents did not have a cause of action under Section 1983 for damage to the parent-child relationship where their child was sexually molested by a teacher); *Divergilio v. Skiba,* 919 F.Supp. 265, 269 (E.D.Mich.1996) (holding that parents failed to state a claim under Section 1983 for deprivation of their parent-child relationship where the teacher exposed himself to their child). Whether or not school officials notified Marilyn Love, the action cannot be said to have been directed specifically toward disruption of the family relationship.

Finally, the Court notes that the lack of parental notification may bear on the constitutionality of the search as it relates specifically to T.L. It is unquestionably a factor to consider, although courts outside of this Circuit have concluded that a student's constitutional rights were not violated even when searches were conducted without parental consent. *See, e.g., Cornfield by Lewis v. Consolidated High School Dist. No. 230,* 991 F.2d 1316, 1319 (7th Cir.1993) (finding no Fourth Amendment violation when a plaintiff with a history of disciplinary problems was caught outside of the school building in violation of school rules and school officials, noticing a "bulge" in student's pants and suspecting him of "crotching" drugs, strip-searched him the next day without parental consent); *Gutin v. Washington Tp. Bd. of Educ.,* 467 F.Supp.2d 414, 424 (D.N.J.2006) (holding that the Fourth Amendment does not require parental consent in every case before testing a student who is reasonably suspected of being under the influence of drugs while in school). However, this issue is not presently before the Court. The relevant inquiry is whether Marilyn Love has a valid Section 1983 claim in her own right. In this regard, the Court finds that the Plaintiffs have not come forward with any evidence that a federal constitutional right of Marilyn Love was violated by any of the Defendants. Accordingly, the Defendants are entitled to summary judgment dismissing the claims of the Plaintiff Marilyn Love.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Defendants' motion for summary judgment dismissing the Plaintiffs' claims against Paul K. Doyle and Andrew Pekar is denied; and is further

**ORDERED** that the Defendants' motion for summary judgment dismissing the Plaintiffs' claim for violations of Plaintiff Marilyn Love's constitutional rights is granted.

**SO ORDERED.**